**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DANIEL HINTON,<br>　　　　Plaintiff<br>　　　v.<br>COMBINED SYSTEMS, INC., *et al.*,<br>　　　　Defendants / Third-Party Plaintiffs<br>　　　v.<br>FEDERAL BUREAU OF INVESTIGATION,<br>　　　　Third-Party Defendant | Civil Action No. 13-834 (CKK) |

**MEMORANDUM OPINION**
(May 20, 2015)

Plaintiff Daniel Hinton is an employee of the Federal Bureau of Investigation ("FBI") who was injured by the unintentional detonation of flash bangs, a type of explosive device, in a FBI facility. Plaintiff brought this tort action against Combined Systems, Inc., and Combine Tactical Systems, Inc. (collectively, "Combined Systems"), who manufactured the flash bangs and sold them to the FBI. Plaintiff seeks damages on the basis of strict liability and negligence.[1] Combined Systems, in turn, filed a third-party complaint in this action against the FBI, seeking contribution and indemnification with respect to Plaintiff's claims. Before the Court is Third-Party Defendant FBI's [50] Motion to Dismiss Third-Party Plaintiffs' First Amended Complaint. Upon consideration of the pleadings,[2] the relevant legal authorities, and the record as a whole,

---

[1] Specifically, Plaintiff brings claims for manufacturing defect (strict liability), design defect (strict liability), failure to warn (strict liability), failure to warn (negligence), and negligence.

[2] The Court's consideration has focused on the following documents:
- First Am. Third-Party Compl., ECF No. 47;
- Third-Party Def.'s Mot. to Dismiss Third-Party Pls.' First Am. Compl. ("Third-Party Def.'s Mot."), ECF No. 50;
- Third-Party Pls.' Opp'n to the Motion of the United States of America to Dismiss the Am. Third-Party Compl. ("Third-Party Pls.' Opp'n"), ECF No. 52; and

1

the Court GRANTS Third-Party Defendant's [50] Motion to Dismiss. The Court concludes that

the contribution and indemnification claims in Third-Party Plaintiffs' First Amended Complaint

are not viable under District of Columbia law. Therefore, those claims are outside the limited

waiver of sovereign immunity by the United States in the Federal Tort Claims Act, and this Court

has no subject matter jurisdiction over those claims. The Court dismisses the First Amended

Third-Party Complaint in its entirety.

## I. BACKGROUND

For the purposes of the motion before the Court, the Court accepts as true the well-

pleaded allegations in Third-Party Plaintiff's First Amended Complaint. The Court does "not

accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the

facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014).

The Court recites the principal facts pertaining to the issues raised in the pending motion.

Plaintiff Daniel Hinton was working at the FBI on September 13, 2011, as a Special

Agent at the Washington Field Office. First Am. Third-Party Compl. ¶ 10. Plaintiff alleges that,

on September 13, 2011, he noticed a bag of flash bangs that had been deployed in an earlier

SWAT operation. *Id.* ¶ 11. Plaintiff believed that the flash bangs had been expended because the

safety pins had been removed, and Plaintiff attempted to insert ordinary paper clips into the flash

bangs in an attempt to create a training device. *Id.* In doing so, the hammer of one flash bang

caused that flash bang to detonate, injuring Plaintiff. *Id.*

---

- Third-Party Def.'s Reply in Support of its Mot. to Dismiss ("Third-Party Def.'s Reply"), ECF No. 53.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

During the relevant time period, Combined Systems designed, manufactured, and sold flash bangs to the FBI pursuant to FBI Contract No. J-FBI-10-071. *Id.* ¶ 12. The product was intended for use by the Tactical Support Branch of the FBI. *Id.* When Combined Systems and the FBI entered into the contract for flash bangs, CSI insisted that it provide use and safety training to individuals who would be using the flash bangs in the course of their employment. *Id.* ¶ 15. The FBI responded that it was sufficiently familiar with the product and would provide its own training. *Id.* Combined Systems agreed to this arrangement based on the experience of the FBI as a law enforcement agency. *Id.* Notwithstanding this agreement, Combined Systems provided two training documents to the FBI regarding the use and safety of the flash bangs, including handling and disposal of the flash bangs. *Id.* ¶ 16.

As a result of this incident, Plaintiff Hinton brought this action against Combined Systems. Combined Systems, in turns, filed a Third Party Complaint against the FBI. In response, the FBI filed a Motion to Dismiss. *See* ECF No. 34. After the parties briefed the Motion to Dismiss, including briefing on a request from Combined Systems to strike the FBI's reply in support of its Motion to Dismiss or, alternatively, to file a sur-reply, the Court granted Combined Systems' unopposed request to file an Amended Third-Party Complaint. *See* Minute Order Dated November 10, 2014. The First Amended Third-Party Complaint presents four claims against the FBI: breach of express contract – failure to properly train and supervise (Count I); breach of implied contract – failure to properly train and supervise (Count II); common-law indemnity – failure to properly train and supervise (Count III); and contribution – failure to properly train and supervise (Count IV). The FBI then filed a [50] Motion to Dismiss Third-Party Plaintiffs' First Amended Complaint. That motion is now pending before the Court.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a

complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed.

R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of

'further factual enhancement.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual

allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*,

550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 678. In deciding a Rule 12(b)(6) motion, a court may consider "the

facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the

complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the

document is produced not by the plaintiff in the complaint but by the defendant in a motion to

dismiss." *Ward v. District of Columbia Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119

(D.D.C. 2011) (citations omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of

establishing that the court has subject matter jurisdiction over its claim. *Moms Against Mercury*

*v. FDA,* 483 F.3d 824, 828 (D.C. Cir. 2007). In determining whether there is jurisdiction, the

Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or

the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."

*Coal. for Underground Expansion v. Mineta,* 333 F.3d 193, 198 (D.C. Cir. 2003) (citations

omitted). "At the motion to dismiss stage, counseled complaints, as well as *pro se* complaints,

are to be construed with sufficient liberality to afford all possible inferences favorable to the

4

pleader on allegations of fact." *Settles v. U.S. Parole Comm'n,* 429 F.3d 1098, 1106

(D.C.Cir.2005). "Although a court must accept as true all factual allegations contained in the

complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1)," the factual allegations

in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a

12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.,* 503

F.Supp.2d 163, 170 (D.D.C. 2007) (citations omitted).

### III. DISCUSSION

Defendant moves to dismiss Third-Party Plaintiffs' First Amended Complaint pursuant to

rule 12(b)(1), for lack of jurisdiction, and pursuant to rule 12(b)(6), for failure to state a claim.

The FBI argues that the contribution claim fails because of the exclusive remedies of the Federal

Employee Compensation Act ("FECA"). With respect to the common-law indemnification claim,

the FBI argues that it fails because the FBI owes no duty of indemnification to Combined

Systems. With respect to the express and implied breach of contract claims, the FBI argues that

they fail because the FBI owes no duty to Combined Systems and because this Court has no

jurisdiction over claims that sound in contract. The Court discusses the parties' arguments, in

turn, and concludes that the First Amended Third-Party Complaint must be dismissed in its

entirety.[3]

### A.  Counts I and II Are Not Properly Considered Breach of Contract Claims

At first glance, it appears that the First Amended Third-Party Complaint includes two

claims for breach of contract: breach of express contract – failure to properly train and supervise

---

[3] The FBI also argues that none of the third-party claims are ripe for adjudication. Because the
Court concludes that none of the claims in the First Amended Third-Party Complaint are viable
and do not fall within the United States' limited waiver of sovereign immunity, the Court does
not reach the FBI's argument that the claims in this action are not ripe.

(Count I) and breach of implied contract – failure to properly train and supervise (Count II). The FBI argues that this Court does not have jurisdiction over these breach of contract claims. *See* Third-Party Def.'s Mot. at 10. In response, Third-Party Plaintiff clarifies that these two counts are not independent contract claims. Instead, they clarify that the contract-related allegations in these two counts are additional bases for indemnification claims under the Federal Tort Claims Act ("FTCA"). Third-Party Pls.' Opp'n at 6-7. Indeed, while the Amended Complaint is less than fully clear regarding this matter, a closer look at the First Amended Third Party Complaint reveals that Combined Systems only seeks indemnification as a result of the alleged breach of express contract and the alleged breach of implied contract; Combined Systems does not seek, through the Amended Complaint, independent contract-related damages. *See* First Am. Third-Party Compl. ¶ 29 ("The contractual indemnity from the FBI to which CSI is entitled under the express contract…"); *id.* ¶ 39 ("In the even that Daniel Hinton recovers any judgment against CSI … CSI is entitled to indemnity from the FBI … "); *id.* ¶ 43 ("The implied-in-fact contractual indemnity from the FBI to which CSI is entitled … "); *id.* ¶ 46 ("In the even that Daniel Hinton recovers any judgment against CSI … CSI is entitled to implied-in-fact indemnity from the FBI … "). Plaintiff presents the alleged express contract and the alleged implied-in-fact contract as bases for indemnity, in addition to the common-law basis for indemnity asserted through Count III. In the interest of clarity, the Court discusses these three bases for indemnity together below.

## B.  Framework for Third-Party Tort Liability of the FBI

In *Lockheed Aircraft Corp. v. United States,* 460 U.S. 190 (1983), the Supreme Court held that FECA's exclusive liability provision "does not directly bar a third-party indemnity action against the United States." *Id.* at 199. The Supreme Court reasoned that FECA "was intended to govern only the rights of employees, their relatives, and people claiming through or

on behalf of them."[4] Similarly, FECA's exclusive liability provision does not directly bar third-party contribution actions. *See Eagle-Picher Indus., Inc. v. United States*, 937 F.2d 625, 634 (D.C. Cir. 1991). "[T]o determine the availability of such actions, [the Court] must look to the 'underlying substantive' law." *Id.* (citation omitted).

The framework for the liability of the United States with respect to tort claims, generally, is established by the FTCA. "The FTCA operates as a limited waiver of sovereign immunity, providing that the United States shall be liable 'in the same manner and to the same extent as a private individual under like circumstances.'" *Id.* at 627-28 (quoting 28 U.S.C. § 2674). "Tort liability under the FTCA is determined according to the law of the place where the alleged acts or omissions occurred." *Harris v. U.S. Dep't of Veterans Affairs*, 776 F.3d 907, 911 (D.C. Cir. 2015) (citing *Tarpeh–Doe v. United States,* 28 F.3d 120, 123 (D.C. Cir. 1994)). "If there is no local law under which 'a private person [ ] would be liable to the claimant in accordance with the law of the place where the act or omission occurred,' sovereign immunity has not been waived." *Hornbeck Offshore Transp., LLC v. United States*, 569 F.3d 506, 510 (D.C. Cir. 2009) (quoting 28 U.S.C. § 1346(b)(1)) (alteration in original); *see also Eubank v. Kansas City Power & Light Co.*, 626 F.3d 424, 427 (8th Cir. 2010) (looking to Missouri law regarding contribution and indemnity claims to determine liability of the United States under the FTCA).

Here, the applicable local law is the tort law of the District of Columbia. Accordingly, to establish a waiver of sovereign immunity with respect to the third-party claims in this action, Combined Systems must be able to state a claim against the FBI for indemnity and for

---

[4] The Supreme Court noted, however, that the District Court, in that action, had determined that the plaintiff had "a right to indemnity under the governing substantive law," which was not challenged on appeal. *Lockheed*, 460 U.S. at 199. Therefore, the Supreme Court did not consider the circumstances under which a right to indemnity—or to contribution—would exist under the "governing substantive law." *Id.*

contribution, respectively, under the substantive tort law of the District of Columbia. To determine the scope of D.C. tort law regarding contribution and indemnity, the Court is bound by the decisions of the District of Columbia Court of Appeals. *Blair-Bey v. Quick*, 151 F.3d 1036, 1050 (D.C. Cir.) *on reh'g,* 159 F.3d 591 (D.C. Cir. 1998) ("We are bound to follow interpretations of D.C. law by the D.C. Court of Appeals, and hence must defer to that court's ruling to the extent that it interprets D.C. law.").

The Court applies this framework to Combined Systems' contribution and indemnity claims.[5]

## C. Contribution Claim

In Count IV of the First Amended Third-Party Complaint, Combined Systems presents a claim for contribution under the Federal Torts Claims Act based on the theory that the FBI failed to properly train and supervise its employees regarding the safe use, handling, and disposal of Combined Systems' flash bang products. First Am. Third-Party Compl. ¶ 72. The FBI argues that Combined Systems cannot prevail on a contribution claim against the FBI under the substantive law of the District of Columbia as a result of the exclusive liability provision of FECA that governs tort claims by Federal employees. Combined Systems argues that there is nothing in FECA's exclusivity provision—or otherwise—that bars their contribution claim against the FBI. The Court agrees with the FBI that Combined Systems' contribution claim fails.

Pursuant to the framework for analyzing third-party actions against the United States set out above, "FECA's exclusive liability provision does not directly bar a third-party suit for

---

[5] The Court notes that Combined Systems appears to conflate the analysis applicable to contribution and indemnity claims in their briefing. "Contribution and indemnification differ in several critical ways." *Eagle-Picher Indus.*, 937 F.2d at 635. The Court analyzes these claims separately as required by the applicable law. *See id.* at 634.

contribution against the United States." *Eubank*, 626 F.3d at 429 (citing *Lockheed*, 460 U.S. at

199). However, "the provision can indirectly bar a claim for contribution by foreclosing the

underlying plaintiff's suit against the United States." *Id. Accord In re McAllister Towing &*

*Transp. Co.,* 432 F.3d 216, 224-26 (3d Cir. 2005); *Walls Indus., Inc. v. United States,* 958 F.2d

69, 71 (5th Cir. 1992). In this case, the Court looks to District of Columbia law to determine

whether the FBI could be liable to Combined Systems for a contribution claim stemming from

Plaintiff Hinton's tort claims against Combined Systems.

"Contribution is based on 'the principle that a party who discharges a liability shared with

another should not bear the sole obligation for payment.'" *George Washington Univ. v. Bier*, 946

A.2d 372, 375 (D.C. 2008) (quoting *Hall v. George A. Fuller Co.,* 621 A.2d 848, 850 n.3 (D.C.

1993)). The "right of contribution does not arise 'without a finding that the party seeking

contribution is a joint tortfeasor along with the party from whom contribution is sought.'" *Paul v.*

*Bier*, 758 A.2d 40, 46 (D.C. 2000) (quoting *Hall,* 621 A.2d at 850).

Accordingly, to determine whether a third-party plaintiff, such as Combined Systems, can

assert a contribution claim against the FBI, D.C. law requires this Court to ask whether the

plaintiff, Daniel Hinton, could assert his tort claim against both Combined Systems and the FBI,

as joint tortfeasors. The question, thus, is whether Hinton could pursue a tort claim against the

FBI based on his injuries. In light of FECA's exclusive liability provision, Hinton cannot assert a

tort claim against the FBI, his employer, directly. *See* 5 U.S.C. § 8116(c) ("The liability of the

United States or an instrumentality … with respect to the injury or death of an employee is

exclusive and instead of all other liability of the United States or the instrumentality to the

employee … and any other person otherwise entitled to recover damages from the United States

or the instrumentality because of the injury or death"); *Eagle-Picher Indus., Inc.*, 937 F.2d at 634

("FECA precludes first-party actions against the government"). Because Plaintiff could not pursue a tort claim against the FBI—as a result of the exclusive remedies provision of FECA—the Court concludes that Combined Systems cannot assert a contribution claim against the FBI based on that injury.

The Court's conclusion regarding the application of D.C. law in these circumstances accords with the conclusions of the D.C. courts regarding the intersection of the exclusive remedies of a worker's compensation scheme and third-party contribution claims. In D.C., "joint tortfeasor contribution as a form of recovery is barred by the exclusivity portion of the [D.C. Worker's Compensation] Act." *Myco, Inc. v. Super Concrete Co.*, 565 A.2d 293, 299 (D.C. 1989). The D.C. Court of Appeals further noted that "most jurisdictions hold that 'the employer whose concurring negligence contributed to the employee's injury cannot be sued or joined by the third party as a joint tortfeasor' pursuant to the exclusive-remedy provision of the applicable workers' compensation statute." *Id.* at 297 n.12 (quoting 2B A. LARSON, WORKMEN'S COMPENSATION LAW § 76.20, at 14-654 & n.24). Although this case is not governed by the D.C. Workers' Compensation Act, the analysis and conclusion of the D.C. Court of Appeals regarding the impact of that Act on a related contribution claim supports this Court's conclusion regarding the application of D.C. law to a situation governed by FECA. Just as, under D.C. law, a third-party may not assert a contribution claim against an employer covered by the D.C. Worker's Compensation Act based on an injury to a covered employee, so too Combined Systems may not assert a third-party contribution claim against the United States based on an injury to a Federal employee covered by FECA, the equivalent workers' compensation statute for Federal employees. *Cf. Lockheed Aircraft Corp.*, 460 U.S. at 194 ("In enacting this provision, Congress adopted the principal compromise—the "quid pro quo"—commonly found in workers'

10

compensation legislation: employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government.").

Furthermore, in considering a right of contribution according to maritime common law, the D.C. Circuit of Appeals concluded that "the maritime common law does not allow contribution against a party who holds a statutory immunity from first-party liability." *Eagle-Picher Indus.*, 937 F.2d at 635. Similarly, other Circuits that have concluded that a third-party cannot assert a contribution claim against the United States as a result of liability to a Federal employee. *See Eubank*, 626 F.3d at 430 ("Because the Eubanks have no claim of actionable negligence against the United States, [Third-Party Plaintiff] KCP & L cannot assert a claim for contribution under Missouri law."); *In re McAllister Towing & Transp. Co., Inc.*, 432 F.3d at 226 ("Because FECA immunizes the United States from such liability, there can be no claim for contribution as a matter of law."). Altogether, these cases support the Court's conclusion that, under D.C. law, Combined Systems cannot assert a claim for contribution against the United States on the basis of liability to Plaintiff, a FBI employee, because FECA's exclusive remedy bars a claim by Plaintiff against the United States.

**D.  Indemnification Claim**

"Contribution and indemnification differ in several critical ways. First, and most practically, while contribution provides for a proportionate allocation of liability between joint tortfeasors, indemnity 'shifts the entire loss from one tortfeasor who has been compelled to pay it to ... another who should bear it instead.'" *Eagle-Picher Indus.*, 937 F.2d at 635 (citations omitted).

In Count III of the First Amended Third-Party Complaint, Combined Systems presents a claim for "common-law indemnity" under the Federal Torts Claims Act based on a theory that the FBI failed to properly train and supervise its employees regarding the safe use, handling, and disposal of Combined Systems' flash bang products. First Am. Third-Party Compl. ¶¶ 48-49. The Court understands this count as a claim for equitable or implied-in-law indemnity as discussed below. As discussed above regarding the claims styled as breach of contract claims, Combined Systems also presents an indemnity claim based on a theory of an express contract with the FBI (Count I) and presents an indemnity claim based on a theory of an implied-in-fact contract with the FBI (Count II). As laid out above, because FECA does not directly bar a third-party indemnity claim against the United States based on an injury to a Federal employee, the Court must consider whether such an indemnity claim is viable under District of Columbia law, the applicable substantive law in these circumstances. *See Lockheed*, 460 U.S. at 199. The FBI argues Combined Systems cannot prevail on an indemnity claim against the FBI under the substantive law of the District of Columbia because the FBI does not owe any duty to Combined Systems that would support such an indemnity claim. Combined Systems responds, essentially, that the FBI assumed a duty towards Combined Systems regarding training and supervision of employees that supports an indemnity claim and that FECA does not bar an indemnity claim against the FBI. The Court agrees with the FBI that the First Amended Third Party Complaint does not present a viable claim for express or implied indemnity of Combined Systems by the FBI.

"Indemnity is a common law remedy which shifts a monetary loss from one compelled to pay it to another whom equity dictates should bear it instead." *Myco*, 565 A.2d at 297. "A right to indemnity may either be express, arising out of a written agreement, or implied, arising out of

a relationship between the parties." *Id.* "Where there is no express contract provision, an

obligation to indemnify may be implied in fact on an implied contract theory or implied in law in

order to achieve equitable results." *Quadrangle Dev. Corp. v. Otis Elevator Co.*, 748 A.2d 432,

435 (D.C. 2000). "In 'implied in law,' or 'equitable' indemnity, 'the obligation is based on

variations in the relative degrees of fault of joint tortfeasors, and the assumption that when the

parties are not *in pari delicto,* the traditional view that no wrongdoer may recover from another

may compel inequitable and harsh results.'" *Id.* (quoting *E. Penn Mfg. Co. v. Pineda*, 578 A.2d

1113, 1127 n.20 (D.C. 1990)). "A duty to indemnify may also be implied 'out of a relationship

between the parties,' to prevent a result 'which is regarded as unjust or unsatisfactory.'" *Id.*

(quoting *Myco,* 565 A.2d at 297). The latter theory of implied indemnity, termed implied-in-fact

or implied contractual indemnity, "is based on the well-established theory that if one breaches a

duty owed to another and the breach causes injury, the former should compensate the latter."

*Myco*, 565 A.2d at 298. To establish a right to implied-in-fact indemnity, "'the obligation must

arise out of a specific duty of defined nature—separate from the injury to the [plaintiff]—owed

to the third party ....,' and there must also be a special legal relationship between the tortfeasors."

*Quadrangle Dev. Corp.*, 748 A.2d at 435 (quoting *Myco*, 565 A.2d at 299). The Court considers

these three bases for indemnity—express, implied-in-law, and implied-in-fact—in turn.

The Court first turns to express contractual indemnity. "One of the most common, and

simple bases of indemnity is a contract that provides for it." *E. Penn Mfg. Co.*, 578 A.2d at 1126

(quoting W. KEETON, D. DOBBS, R. KEETON, & D. OWEN, PROSSER & KEETON ON THE LAW OF

TORTS, § 51, at 341 (5th ed. 1984)). Plaintiff does not allege the existence of any direct

indemnity provision, whether through an oral or written agreement, through which the FBI

explicitly agreed to accept the legal responsibility for any liabilities that might accrue to

Combined Systems. Instead, Plaintiff argues that the provisions of the written contract between the FBI and Combined Systems, together with oral representations by the FBI, "constituted an express contractual agreement that the FBI would be legally liable for the consequences of failure to adequately train and warn FBI personally including Plaintiff in the safe use, handling and disposal of CSI's mini flash bangs." First Am. Third-Party Compl. ¶ 27. The Court disagrees and concludes that the FBI has no express contractual duty to indemnify Combined Systems in these circumstances.

To support its claim, Combined Systems relies first on its allegation that the written contract shows that the FBI was aware of the risks associated with the project. *See id.* ¶ 24. Second, Combined Systems relies on its allegation that the FBI declined to have Combined Systems train FBI employees regarding the use of the flash bangs in light of the FBI's representation that the agency was familiar with the product and would provide its own training. *See id.* ¶¶ 25-27. These allegations are not sufficient to support an express indemnification claim. Combined Systems cannot point to any language—oral or written—that even suggests that the FBI accepted legal liability that might accrue to Combined Systems. *Contrast E. Penn Mfg. Co.*, 578 A.2d at 1126, n.19 (indemnification claim based on explicit acceptance of "labeling responsibility" regarding requirement to attach labels to products sold). Combined Systems claims that it only agreed to sell the product without training the FBI employees because the FBI represented that it would provide the appropriate training. Notably, however, Combined Systems does not claim that this agreement was premised on an agreement for the FBI to indemnify Combined Systems. Absent such language—oral or written—the Court find that there is not an express contractual agreement for the FBI to indemnify Combined Systems. Accordingly, the Court dismisses Count I of the First Amended Third-Party Complaint, styled in the complaint as

the breach of express contract claim. Whether Combined Systems' allegations support indemnification on an implied-in-law or implied-in-fact theory are separate questions that the Court considers next.

The Court now turns to implied-in-law indemnity. "In 'implied in law,' or 'equitable' indemnity, 'the obligation is based on variations in the relative degrees of fault of joint tortfeasors, and the assumption that when the parties are not *in pari delicto,* the traditional view that no wrongdoer may recover from another may compel inequitable and harsh results.'" *Quadrangle Dev. Corp. v. Otis Elevator Co.*, 748 A.2d at 435 (citing *E. Penn Mfg. Co.,* 578 A.2d at 1127 n.20). Although Combined Systems' Opposition is far from a model of clarity in setting out the related-but-distinct bases for Combined Systems' indemnification claims, it appears that Combined Systems' claim for implied-in-law (or equitable) indemnification is based on the distinction between active and passive liability. *See* Third-Party Pls.' Opp'n at 10. Under this theory, courts have "allowed indemnification when the third party's conduct 'passively' contributes to an injury while the employer's acts 'actively' cause the injury." *Myco*, 565 A.2d at 298. However, the D.C. Court of Appeals has rejected the "active/passive" theory of implied indemnity.[6] *Quadrangle Dev. Corp.*, 578 A.2d at 436 n.5. Given the D.C. Court of Appeals' outright rejection of "active/passive" implied indemnity, it is unclear what remains of implied-in-law indemnity under D.C. law. *See Myco*, 565 A.2d at 297-98 (categorizing implied indemnity into "active/passive" indemnity and indemnity based on an independent duty, also known as implied-in-fact indemnity). Regardless of whether implied-in-law indemnity remains viable in other circumstances, D.C. law does not provide for implied-in-law indemnity under the facts of

---

[6] This rejected theory of implied indemnity is also referred to as the "primary/secondary" theory of implied indemnity. *Myco*, 565 A.2d at 298.

this case. In *Myco*, the D.C. Court of Appeals concluded that the "active/passive" theory of implied indemnity could not be used to establish a duty of indemnity by an employer to a third party because that theory "is, in reality, the joint liability of the employer and third party—albeit in differing degrees." 565 A.2d at 298. The D.C. Court of Appeals concluded that, because an employer could not be directly liable to an employee under the D.C. Workers' Compensation Act, such an employer could not be jointly liable with a third party. *Id.* at 298-99. Therefore, just as an employer could not be liable for contribution under those circumstances, such an employer could not be liable for implied indemnity under a theory of common (but differentiated) liability. *See id.* at 299. Similarly reasoning mandates the outcome here. Just as the Court concluded above that the FBI cannot be liable to Combined Systems for contribution as a result of the exclusive remedy scheme of FECA, so too the FBI cannot be liable to Combined Systems based on an implied-in-law theory of indemnity. Accordingly, the Court dismisses Count IV of the complaint, styled by Combined Systems as a common-law indemnity claim, which presents a claim for implied-in-law or equitable indemnity.

Finally, the Court turns to implied-in-fact—or implied contractual—indemnity. "A duty to indemnify may also be implied 'out of a relationship between the parties,' to prevent a result 'which is regarded as unjust or unsatisfactory.'" *Quadrangle Dev. Corp.*, 748 A.2d at 435 (quoting *Myco*, 565 A.2d at 297). "This concept 'is based on the well-established theory that if one [tortfeasor] breaches a duty owed to another and the breach causes injury, the former should compensate the latter.'" *Id.* (quoting *Myco*, 565 A.2d at 298) (alteration in original). "'In order to establish the right to this particular type of implied indemnity, the obligation must arise out of a specific duty of defined nature—separate from the injury to the [plaintiff]—owed to the third party ....,' and there must also be a special legal relationship between the tortfeasors." *Id.*

16

(quoting *Myco*, 565 A.2d at 299 n.8) (alteration in original). Combined Systems argues that the FBI owes it a duty as a result of the FBI's representation that it would provide training to ensure the safe use of the flash bangs by FBI employees. The Court disagrees and concludes that Combined Systems has not alleged facts supporting the type of special relationship that is a necessary condition for implied-in-fact indemnity.

In the District of Columbia, "when the indemnity is based on a special legal relationship existing separate and apart from any liability which the employer might have had to the injured employee, indemnity is allowed." *Myco*, 565 A.2d at 299. In *Myco, Inc. v. Super Concrete Co.*, and in *Howard University v. Good Food Services, Inc.*, the D.C. Court of Appeals considered the type of relationships that would support an implied-in-fact indemnity claim against an employer, specifically considering circumstances in which a first-party defendant attempts to recover from the employer of a first-party plaintiff employee.[7] *See Myco*, 565 A.2d at 293; *Howard Univ. v. Good Food Servs., Inc.*, 608 A.2d 116, 123 (D.C. 1992). In *Myco*, the court considered a situation where a plaintiff had sued the manufacturer of a power truck washer for the death of a spouse who was killed while using the device in the course of his employment at Super Concrete. *Good Food Servs.*, 608 A.2d at 124. The manufacturer argued that the employer owed it an implied duty to use the product in a way that would not expose the manufacturer to liability. *Id.* Because the employer "owed a duty of proper care and use" of the washer only to the employees—but not to the manufacturer—the D.C. Court of Appeals concluded that there was

---

[7] Combined Systems argues that *Myco* and other related cases were wrongly decided by the D.C. Court of Appeals. *See, e.g.*, Third-Party Pls.' Opp'n at 25. However, the D.C. Court of Appeals is the final arbiter of D.C. law, and this Court may not conclude that the D.C. Court of Appeals is incorrect regarding D.C. indemnity law. Any arguments by Combined Systems that rely on the claim that the D.C. Court of Appeals incorrectly resolved questions of D.C. law fail at the outset as the Court is bound by those decisions.

no "special relationship" between the manufacturer and the employer that would require the employer to indemnify the manufacturer when sued by the employee. *Id.* In *Good Food Services*, the D.C. Court of Appeals considered a situation where Howard University contracted with Good Food Services to operate campus kitchens, and a Good Food Services employee who was injured on the job in a University kitchen filed a negligence action against the University. *Id.* at 118-19. The University claimed that Good Food Services owed it a duty of indemnification regarding the injury at issue. *Id.* at 118. In contrast to *Myco*, the D.C. Court of Appeals concluded that Good Food Services owed the University "an independent duty regarding the proper care and use" of the device that caused the injury of the employee-plaintiff. *Id.* at 124. The D.C. Court of Appeals explained the key distinction between the two situations: "Unlike the situation in *Myco,* which involved a one-time sale of equipment with follow-up service, the parties in this case had an ongoing and comprehensive contractual relationship involving day-to-day interaction and decisionmaking."[8] *Id.* This distinction is critical to the Court's resolution of this case.

The Court concludes that the circumstances in this case—as alleged by Combined Systems—are similar to those in *Myco* rather than those in *Good Food Services*. Like *Myco*, this case involved a "one-time sale" of a product, flash bangs. Indeed, in *Myco*, even though the one-time sale of the truck washer also included "follow-up service," the D.C. Court of Appeals concluded that there was not an ongoing relationship between the parties. *See id.* Similarly, even though Combined Systems alleges that the FBI represented that it would provide all necessary training to FBI employees regarding the use of the flash bangs, the relationship is fundamentally

---

[8] Notwithstanding the conclusion that the parties in *Good Food Services* had the type of special legal relationship that could support an indemnity claim by the University, the D.C. Court of Appeals ultimately concluded that the indemnity claim was not viable because the food services contractor's breach of the duty owed to the University was not the cause of the plaintiff's injuries. 608 A.2d at 124.

one of a one-time sale—not an ongoing relationship. The relationship between Combined

Systems and the FBI is not like the relationship in *Good Food Services*, where the contract

required the University and the food services contractor to interact continually and to engage in

continued joint decisionmaking. Indeed, there is no indication that the parties in this case had any

interactions at all once Combined Systems had provided the flash bangs to the FBI. Because the

relationship in this case is that of a one-time sale, like in *Myco*, there is no special relationship in

this case that could support a claim for implied-in-fact indemnity.

Moreover, in *Myco*, the D.C. Court of Appeals provided a non-exclusive list of the types

of special legal relationships that could support a third-party claim for indemnification: bailor

and bailee; lessor and lessee; and principal and agency. 565 A.2d at 299. Although the D.C.

Court of Appeals has not suggested that *only* those relationships could support a third-party

indemnification claim, it is notable that each of those relationships entails an ongoing legal

relationship where each party owes the other legal duties throughout the duration of the

relationship—just as in *Good Food Services*—in connection with the custody of an object

(bailor-bailee), the occupation of a property (lessor-lessee), or one person's actions on another's

behalf (principal-agent). The content of this list confirms the Court's conclusion that the one-

time relationship at issue in this case is not the type of special legal relationship that can give rise

to an implied-in-fact duty of indemnification under D.C. law. Accordingly, the Court dismisses

Count II of the First Amended Third-Party Complaint.

*     *     *

In sum, pursuant to the Supreme Court's interpretation of the exclusive liability provision

of FECA in *Lockheed*, the viability of the indemnity claims presented by Third-Party Plaintiff

Combined Systems depends on D.C. law. For the reasons stated above, Combined Systems'

claims for express, implied-in-law, and implied-in-fact each fail. Therefore, these claims exceed the scope of the government's waiver of sovereign immunity under the FTCA. Similarly, the contribution claim against the FBI fails under D.C. law because, as a result of the exclusive liability provision of FECA, Plaintiff cannot assert an independent tort claim against the FBI directly. That claim, as well, exceeds the waiver of sovereign immunity by the United States.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Third-Party Defendant's [50] Motion to Dismiss. Because the contribution claim and the express and implied indemnification claims are not viable pursuant to District of Columbia law, the Court does not have subject matter jurisdiction over those claims. Accordingly, the Court dismisses the First Amended Third-Party Complaint in its entirety.

Discovery in this matter has been stayed since November 13, 2013. Now that the FBI's motion to dismiss has been resolved, the parties shall file a Joint Discovery Plan identifying what discovery remains and proposing a schedule for the completion of that discovery. The parties shall file the plan by no later than June 8, 2015. The Court will address the stay on discovery after the submission of an appropriate discovery plan.

An appropriate Order accompanies this Memorandum Opinion.

Dated: May 20, 2015

                                   /s/
                              COLLEEN KOLLAR-KOTELLY
                              United States District Judge